IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY LAVERNE F., ) | |
| ) | No. 21 C 5371 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Amy Laverne F. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

### Background

On August 21, 2015, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 13-22, 74-96.) The Appeals Council declined review, and plaintiff appealed to this Court, which reversed and remanded the case for further proceedings. (R. 2015, 2040-42.)

After holding another hearing, the ALJ again denied plaintiff's claim. (R. 1959-70.) Plaintiff did not request Appeals Council review and the Appeals Council did not otherwise assume jurisdiction, making the ALJ's decision the final decision of the Acting Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity from September 30, 2014 through December 31, 2016, the requested closed period of disability. (R. 1961.) At step two, the ALJ found that plaintiff has the severe impairments of cervical spine disorder, history of fibromyalgia, and obesity. (R. 1962.) At step three, the ALJ found that,

during the relevant time, plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R. 1963.) At step four, the ALJ found that, during the relevant time, plaintiff had the RFC to perform her past relevant work as a central office manager and order clerk, and thus she was not disabled. (R. 1964-70.)

Plaintiff contends that the ALJ erred in relying on the opinion of medical consultant Dr. Jhaveri, given the ALJ's statement in the first decision that "[n]ew and material evidence" had been added to the record after Dr. Jhaveri reviewed it. (R. 19.) Instead, plaintiff argues, the ALJ should have had a medical expert review the new evidence. SSA guidance instructs an ALJ to obtain an updated opinion from a medical expert if "additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *4 (S.S.A. July 2, 1996). The ALJ discussed the new evidence, *i.e.*, records from Dr. Mather and plaintiff's physical therapist that showed plaintiff's marked improvement after her cervical spine surgery,[1] and concluded that it would not change Dr. Jhaveri's determination that plaintiff was not disabled. (R. 1967-68.) Thus, the ALJ's failure to seek expert review of the additional evidence did not violate SSR 96-6p. *See Pierce v. Astrue*, 907 F. Supp. 2d 941, 953 (N.D. Ill. 2012) ("Social Security Ruling 96-6p only mandates an updated opinion when the ALJ determines that the additional medical evidence may change the opinion of the state agency doctors. Contrary to Claimant's position, the ALJ was not required under 96-6p to solicit an updated medical opinion simply because he submitted new evidence.").

Plaintiff also argues that the ALJ erred by adopting the RFC endorsed by Dr. Jhaveri, given that he had not reviewed all of the medical evidence. (*Compare* R. 91-93, *with id.* 1964.)

---

[1] The Court addresses this evidence more fully *infra*.

The ALJ acknowledged that there was evidence Dr. Jhaveri had not reviewed, but said "there is no evidence to show that [plaintiff] had greater limitation(s) lasting or expected to last at least twelve continuous months during the alleged closed period of disability." (R. 1967-68.) The records from Dr. Mather and plaintiff's physical therapist support the ALJ's statement. Dr. Mather first saw plaintiff on September 17, 2015 for neck, back, and arm pain. (R. 1839.) He attempted conservative treatments and when they failed, he performed surgery on plaintiff's cervical spine on March 21, 2016. (R. 1829-38.) Eight weeks later, plaintiff "ha[d] full range of motion of the cervical spine, only a little bit of pulling in the posterior cervical spine," and her motor and neurological exams were normal. (R. 1827.) Similarly, plaintiff's post-surgery physical therapy records show that plaintiff improved to the point that she stopped going. (*See* R. 1873 (6/7/16 notes: "Patient . . . came to the clinic today without her cane and reports she has been comfortably walking without [it] regularly."); R. 1871 (6/10/16 notes: "Patient reports her neck has been feeling better lately . . . ." ); R. 1864 (6/23/16 notes: "Patient is progressing well with physical therapy, demonstrating increased cervical rotation ROM, and increased function."); R. 1862 (6/24/16 notes: "Patient reports that she was cleared to begin running again and that she was able to run/walk this morning without any difficulty."); R. 1861 (6/30/16 notes: "Patient tolerates exercises well and is able to perform all exercises without any reports of fatigue."); R. 1859 (2/22/17 note stating that plaintiff was discharged because she did not return to therapy or return the clinic's calls).) Because these records do not show that plaintiff had an impairment that lasted for twelve months during the alleged closed period of disability, the ALJ's adoption of Dr. Jhaveri's RFC is not error.

Nor was it error for the ALJ to omit manipulative restrictions from the RFC. Most of the medical evidence plaintiff cites for her contention that such restrictions should have been

included is from before her surgery. (*See* ECF 16 at 6 (citing R. 336 (record dated 11/11/15); R. 348 (record dated 10/14/15); R. 386 (record dated 9/30/14); R. 589 (record dated 3/10/16); R. 1835 (record dated 12/11/15)).) Moreover, the records that post-date her surgery only cover a two-month period. (*See* R. 1088 (record dated 7/12/16); R. 1097 (record dated 9/20/16); R. 1108 (record dated 9/19/16).) The remaining evidence plaintiff cites is her own testimony and statements about her manipulative restrictions. (*See* ECF 16 at 6 (citing R. 46-48, 58 (hearing testimony); R. 270-71, 274 (plaintiff's function report).) The ALJ, however, said the objective evidence did not support plaintiff's subjective reports, so she credited the former (R. 1966-67), a decision that was wholly within her purview. *See Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) ("[T]he [ALJ] is responsible for weighing the evidence, resolving conflicts and making independent findings of fact . . . .").

Plaintiff also argues that the ALJ failed to consider the impact of pain caused by the combination of her severe impairments—cervical spine disorder, fibromyalgia, and obesity—and non-severe impairments—lupus, knee disorder, and headaches.[2] (*See* R. 1962.) Plaintiff says, "the pain she suffered from her severe and non-severe impairments *could have* rendered her entirely unable to perform light or even sedentary work." (ECF 16 at 8) (emphasis added). But it is plaintiff's burden, not the ALJ's, to prove that pain rendered her unable to perform her past relevant work. *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). Plaintiff's failure to make that showing is not a reason to remand.

Plaintiff further assails the ALJ's consideration of plaintiff's obesity. The ALJ said:

> [Plaintiff's] obesity may produce or contribute to symptoms of back, knee, or other musculoskeletal pain, and limit mobility and stamina. The undersigned has fully considered the claimant's obesity and any related limitations in assessing the claimant's [RFC]. . . . In fact, because the claimant's obesity has contributed to

---

[2] Plaintiff says that arthritis is one of her pain-causing impairments (ECF 16 at 7), but the ALJ did not identify arthritis as either a severe or a non-severe impairment. (R. 1962.)

> low back and widespread pain it is, in part, why she has been limited to light work and given several additional postural limitations.

(R. 1966.) Plaintiff argues that this statement is insufficient because "the ALJ did not articulate *how* she determined that [plaintiff's] widespread pain, exacerbated by obesity, could be accommodated by light work." (ECF 16 at 8) (emphasis in original). The Court disagrees. The ALJ acknowledged that plaintiff's obesity contributes to her pain and is one of the reasons that she was limited to light work, *i.e.*, work that involves lifting no more than twenty pounds at a time, frequently lifting or carrying of up to ten pounds, or lifting very little but requires significant walking or standing, 20 C.F.R. § 404.1567(b), with certain exceptions, *i.e.*, occasional climbing of ladders, ropes or scaffolds and frequent climbing of ramps or stairs. (R. 1964.) Thus the ALJ here, unlike the one in *Perez ex rel. Velez v. Berryhill*, the case on which plaintiff relies, "discuss[ed] . . . the exacerbating effects of Claimant's obesity on [her] underlying conditions." No. 16 C 7864, 2017 WL 3725505, at *7 (N.D. Ill. Aug. 29, 2017). The ALJ's explanation of how she considered plaintiff's obesity is sufficient.

Next, plaintiff asserts that the ALJ did not provide sufficient justification for discounting plaintiff's alleged limitations in sitting, standing, walking, reaching, lifting, carrying, and fingering. In the main, plaintiff cites to her own statements as support for these limitations (*see* ECF 16 at 9-12), statements the ALJ found to be unsupported by the medical evidence. (*See* R. 1965-67.) Moreover, the medical evidence plaintiff cites to show that she has these limitations does not support her claim. For example, the low back pain that plaintiff says limits her ability to sit appears in her medical records in September 2015 and not again until September 2016, three months before the end of the alleged closed period of disability. (ECF 16 at 9 (citing R. 1090, 1108, 1637, 1839).) Similarly, the medical evidence plaintiff cites to show that she has limitations in lifting, carrying, reaching, handling, and fingering is from before her surgery and a

6

few days after. (*Id.* at 12 (citing R. 337, 386, 421, 1097-98, 1835, 1837-38, 1840, 1866-67)).) Thus, even if plaintiff had these limitations at one point, the evidence does not show that they lasted for twelve months or persisted after her surgery. Finally, the ALJ said she did not adopt restrictions on reaching, handling, and fingering because there was no evidence that plaintiff has grip problems and the record showed that, after the closed period, she worked at a job that required her to use a computer. (R. 1967.) In short, the ALJ sufficiently explained why she rejected various limitations urged by plaintiff.

Finally, plaintiff contests the ALJ's symptom evaluation. The Court will only overturn the ALJ's symptom evaluation if it "lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). That is not the case here because: (1) as discussed above, the ALJ found that the objective medical evidence did not support plaintiff's allegations; (2) the record showed that the treatments plaintiff pursued were largely successful; (3) plaintiff told an independent medical examiner, a few months after her surgery, that she could walk a mile and run without difficulty; and (4) the examiner found that plaintiff had normal grip strength, could grasp and manipulate objects, and had normal range of motion in her shoulders, elbows, wrists, hips knees, and ankles. (*See* R. 1963 (citing R. 1089-90); R. 1968.) Because the ALJ's symptom evaluation does not lack explanation or support, it is not a basis for remand.

**Conclusion**

For the reasons set forth above, the Court affirms the Acting Commissioner's decision, grants the Acting Commissioner's motion for summary judgment [21], and terminates this case.

**SO ORDERED.**                    **ENTERED: February 24, 2023**


_____
**M. David Weisman**
**United States Magistrate Judge**